Is the United States versus Trevino, is that correct? Yeah. May it please the court. My name is Tony Kaposi. I'm an attorney from Fresno, California. And basically there were two issues I want to discuss today. I wasn't going to deal with the final argument by the government. I'd like to deal with the good faith instruction that was not given by the court. It is our position, and I think it's a very strong case, that the court erred in refusing to give the good faith instruction in this particular instance. The standard of review is a de novo review by this court. Clearly, the law is clear on this issue. You know the case that that comes out of, that's the Cheek case, right? The Cheek case, yes. It's the kind of case where, you know, the taxpayer has some kind of a, you know, in my view, some kind of a very odd misunderstanding what the law says. And Cheek simply says, well, if that misunderstanding is held in good faith, you have to give that instruction. But there's no such claim here. I mean, you know, I don't think, is the defendant here claiming, well, you know, I wasn't earning real money because it's not gold, so I didn't have to pay anything. There's no Cheek type claim here. So why is that good faith instruction necessary? It's not the type of case where it applies, is it? I think it does. In Cheek, that had to do with an airline pilot who believed that the currency that the United States used was an actual currency, which is an unreasonable belief. But the court in Cheek said, even if it's unreasonable, it should be given. In this particular case, we have someone who came from Mexico, had five years of education in Mexico, could speak some English, worked in the fields all her life, really didn't understand the basics of a tax return. She relied on her accountant to prepare the tax returns. Again, it's a very different issue, you know. I mean, that's whether she's got the criminal intent necessary. It's not just a good faith belief. That's true. You know, and you have instructions on that, right? Yes, we did. But the government's argument in this particular case is that the elements of the crime covered the defense in this case. But the appellant in this case had, I argue very strongly, a good faith belief that what the accountant was doing was correct. You know, if it's not the Cheek case that applies, then it's the Claiborne case, the Ninth Circuit case with Judge Claiborne. In that particular instance, he argued that he relied upon his lawyer. He relied upon his accountant. And in this particular instance, the same argument would apply. This defendant, this appellant. Well, she's not saying she relied upon advice from him. She's basically saying, I didn't know. I signed what was put in front of me. So she's not offering a defense that goes to the substance of any advice that she's leaning on. She's, as I understood it, basically claiming, I didn't know, period. And relied? And the question of whether she knew something that was wrong was ignorance. Well, good faith reliance may explain why someone believes something or knows something and may be incorrect that they relied on somebody. In this case, it's not I'm leaning on somebody to believe X. It's just, I don't know. I signed whatever was put in front of me. That's right. That was her defense. She signed. I don't think that means that to me Claiborne is like Cheek. There is something substantive that the defendant is asserting a belief in because they were told that. And what is that substantive thing here? What is it that she was relying upon? She was relying upon what was put in front of her was accurate. That's true. Well, that's something different. That's more likely to be covered. At least I understand the government's argument that says that's something the existing instructions will cover. But, you know, then if you look at the Morris case, the case that I cited, I think it's the Eleventh Circuit case. In there, exact same situation. The appellant relied upon the tax preparer. Instead, I had a good faith belief in what was in there was correct. And the government argued exactly the same argument that we have in this case. The elements covered the crime. It's a specific intent crime. If we read the elements to the jury in an instruction, there's no need to give a good faith. Well, the Court in Morris specifically said that's not correct. When the good faith instructions refused, the government argued the same thing in this case, that the elements covered all the defense. Morris Court said the government misunderstands the good faith defense and that it is a complete defense of the crime of filing a tax return. We all know that. And the Court stated, like the government argued in this case, a specific intent crime is negated by a good faith misunderstanding of the law or good faith belief that one is violating the law. In this particular case, the appellant had a good faith belief that she was not violating any law. And the Court in Morris held that the defendants were prejudiced by not giving good faith instruction. And you have to look at the totality of instructions there. In the Bianchi case, I think the Claiborne case would apply in this particular case also. The other argument I wanted to get to so I can save some time and rebuttal, which I think is really the crucial one, is giving that jury instruction number 44. In that instruction, the government, I submitted it in my excerpts of record. But in that instruction, it read to the jury that the defendant's signature on a tax return created a rebuttable presumption that the defendant actually signed the return and had knowledge of its contents. That's the instruction given to the jury. I think the government virtually concedes now that the instruction was a mistake, but the fallback position is that it was, in effect, harmless error, right? That's their argument. And I vehemently argue to this Court, there's no way that this can be a harmless error. That instruction was so incorrect, and I believe placed a burden on the defense. First of all, what's the difference between a presumption, you know, and prima facie proof? Not so much, is there? Well, presumption, in this type of instance, the presumption is just based on a preponderance of evidence. It's not beyond a reasonable doubt. Just because that signature is on a return, automatically the presumption arises that the defendant or the appellant knew what was in the return. And that's the farthest thing from reality in our position, because we argued we didn't know what was in those returns. And here is an instruction. In our case, what Judge Clifton says is based on ignorance. Pretty much. Pretty much. In a belief that what was in those returns was accurate because she relied on the accountant. And, indeed, we had the psychologist testify as to her mental state and how she relied on other people and hired the accountant to take care of these particular problems. And she testified she didn't know what was in the returns. The evidence was clear on that. The government cited the Walters case. And in there, the defendant was charged with a failure to file. And the jury instruction on that case read, and the government is using this case to bolster their argument that this is harmless error. That instruction read that the law presumes that the signature of a partner on a partnership tax return is authorized signature on behalf of the partnership. Well, that was a proper statement of the law under 26-6063. But the presumption here that the defendant's signature on the return automatically means or presumes that she knew what was in it. The entire defense was that she didn't know what was in it. By reading this instruction to the jury, it completely undermines the defendant's defense. That it created a condition precedent to the fact that the appellant knew the context of what was in the return. That is, how much income she made and how much tax was due. The government argued vociferously at the trial to give that instruction. To now say it was harmless error is, I don't think, a proper argument. In the Supreme Court case of Francis v. Franklin, the violation of due process to relieve the state of a burden of persuasion beyond a reasonable doubt is per se a violation of due process. And that's what's happened in this particular case. When an instruction that's in error, like the government concedes here, is given along with other instructions that are proper, how do we know what the jury followed, this instruction, the incorrect one, or the proper instructions? When I submit to the Court, we can't tell. The Lerding case is a similar case decided in the Sixth Circuit. It says when two instructions are given, one correct and one incorrect, it's impossible to know which one the jury followed. I'll submit it on that basis. Thank you, Mr. Conklin. Thank you. Let me see. Good morning. My name is John Conklin on behalf of the United States. And as the defense has not addressed the second issue concerning an allegation of prosecutorial misconduct, nor will the government unless there are any questions from the panel. Moving in order to the issues raised by the defense concerning the good faith. They ask you to do it backwards. All right. I want to address what we were just talking about. And can you tell me what instruction or what other instruction told the jury it should not presume defendant's knowledge of the contents of the tax return based solely upon her signature? There was no other instruction that affirmatively said to the jury, do not presume. So why would the jury not make that inference? Well, the government's position is that there were other instructions that clearly set forth the elements of the offense, including knowingly, willfully, and specific intent. Isn't that part of the problem? The fear is that the jury may make those findings because they've been told that the signature is enough. Correct. The jury was told in the instruction. And the instruction came from a statute as well as from language in a government tax manual that from the signature they can presume she signed it and that she was knowledgeable. Now, the other one. Would you say it came from the statute? No. No, the statute didn't. You're correct, Your Honor. The statute simply says that from, if her signature is on the return, they can presume that she signed it. No. It's prima facie proof that she signed it. Correct. I'm sorry. That she signed it. The problem here is that the defense raises, this is with the knowledge issue, whether or not the language saying that you can presume she was knowledgeable of its contents. It's an element of your case, right? No, the government does not agree that mere knowledge of contents is enough. This is a tax. No, not mere knowledge. But that's one of the elements you have to prove. You have to prove that, right? You have to prove that she knew how much tax she owed and she knew that she didn't pay that much. So she has to know how much she paid. That's what the return shows. That's correct. That's correct. If she knows the contents of the return, she knows how much she paid. Its position is, Your Honor, that the return, the government must prove that she not only knew the contents of the return, but she knew that it was false and that she intended at that point to evade the taxes that were indicated on the return. Look at the, what's the instruction on the elements of the offense? The elements of the offense are set out in the government's brief, Your Honor. It indicates that the defendant must be aware that the, set out at page 21, Your Honor. And it indicates that the defendant, the elements of the offense that the defendant owed more Federal tax to the calendar years as specified. The defendant knew that more Federal tax was owed. And the defendant made an affirmative attempt. Now. And the way she would know that is by, first of all, she has to know how much she paid. The defense here is ignorant. And second, right, know how much was due, and so you have to, you know, you have to subtract or add or whatever. You have to know the difference. The government's position is. That's part of your case to prove that.  The government's position is that if all she said, Your Honor, was, I know, I've And I know what those numbers are. That's not sufficient. She has to know those numbers are wrong. This is not a filing a false return case. This is an evasion case. It's a 7601. She has to know they are wrong. Now, I'd remind the Court as well that the evidence was clear. But before she knows they're wrong, she has to know what it is. I agree. So that's part of the element of your case. Well. To know what it is. But it doesn't establish those elements, Your Honor. And I would again point out to the Court. It's an essential step to establishing it. I would again point out to the Court that the signature issue applies to only one count. Because the evidence was clear at trial that she did not sign the other return. So the return that's the basis of count three. Pardon me, of count two. She did not sign. And the government. That was clear at trial that her signature was not on that return. I'd give credit to defense counsel. Because he pointed out through two government witnesses as well as the defendant. That she did not sign that return. Was that argued to the jury? Yes. I believe it was by defense counsel, Your Honor. The fact that only one return was signed. Yes. And so that the presumption only applies to one? Yes. And she was convicted of two. Yes. As a matter of fact, she was convicted in three counts. The first count was a conspiracy. Now, the government also noted. And the defense said the government argued vehemently for this instruction. There's nothing in the record to support that. I won't deny that the government requested the instruction. But the record is abundantly clear that the instruction was never argued to the jury. The instruction was not mentioned once during the government's closing or rebuttal. The instruction was never argued or mentioned by the defense. The instruction, as a matter of fact, was only read by the court one time. The jury asked for a rereading of a conspiracy instruction. So that only. Did the courts, like some courts do, send in the written instructions to the jury room during deliberation? No, Your Honor, they did not. Judge Coyle's practice is not to do that. He did not do that here. The jury asked for one instruction during deliberations, and they sent in one instruction. That was the 371 instruction on conspiracy. So the government does concede that the four words in this instruction should not have been added. That is, knowledge of its contents. But those were the only four words the jury ever heard. Now, by saying that, of course, the jury did hear the words. And the government is not asking the court to ignore that. The defense argues that there's no way to tell what the jury considered. But what the government is asking this Court to consider is that it was not brought to the jury's attention, it was not argued by the government, it was not highlighted, and it was not by any means part of our case because the crux of the argument in the entire case was the good faith that the defense argued. Your argument is, you know, destroying another presumption, which is that jury is presumed to follow the instructions, right? Absolutely, Your Honor. They do presume to follow the instructions, and the remaining instructions in this case, as the government pointed out, clearly specified that knowledge of the contents of the return were not enough, that she had to know that it was false. It was essential. It was essential that she knew that it was false. The government's argument is, is that she signed a tax return that had numbers on it, and she knew what those numbers were. Yes, Your Honor. But she further then had to know that those numbers were wrong. Yes, Your Honor. That's the government's argument precisely. That she had to know they were wrong. The defense relies on Ludwig. And in order to get a conviction, the jury had to find not that she just knew the contents of the document, but that the contents were, in fact, false. Yes. Under 7601, she must know they were false. Under Ludwig, the defense relies on the Ludwig case. That was a case where the court instructed on Respondent Superior and essentially instructed that the jury could apply Respondent Superior and convict an individual who wasn't essentially part of the offense. And the court clearly and appropriately reversed that. So the government would submit that that does not apply. And the Walters case does clearly say that even if a presumption instruction is incorrect, that that should not be considered standing alone, that the presumption that the instruction should be considered as a whole. Recognizing that I've got over half my time left, I will address the good faith argument briefly if the Court has any further questions concerning that. One, just to clarify, with regard to her signature on only one of the returns. Yes, sir. Was that conceded and accepted by the government by the time the case went to the jury? Was there any dispute on that issue? No, there was not. There was no dispute. Her signature on the one return, and I'm not sure the record makes it clear. Again, I credit defense counsel's cross-examination. My recollection is it was the Internal Revenue Service criminal investigation agent was on the stand, and she was shown both returns in front of the jury. Defense counsel did this on cross-examination, and it's clear by looking at both returns that the second signature is not hers, and in fact, the agent acknowledged that. And in fact, the defendant even said in her direct examination that she did not sign the return. So that return was not signed by her. Concerning the good faith argument, Your Honors, I believe the Court has this argument well in hand. This is not an issue of good faith. The Court referenced perhaps an issue of specific intent, and the government would move even broader than that and would say it's an issue of actus reus, in the sense of the defendant said she did not do anything with the return except for the one return to sign it, and the other return she didn't even sign it. So all she did was her defense essentially was Mr. Archuleta committed the crime, that he filed these false returns, that he prepared the returns. She made clear throughout that she never even filed the returns. She went to his office and in the one instance she signed the one return, the other return she claims she doesn't even know how that was signed, and the evidence bears that out. But concerning good faith, clearly, cheat does not apply, and the case relied upon most importantly by the defense Morris. In Morris, the Court made clear that the defendants had in fact actively participated and had a good faith belief they did provide all their information or their tax preparer. And more importantly, Morris at 1117 of the opinion notes that that error, you do not have to give a good faith instruction if all the elements are appropriately satisfied. The only reason the Morris Court reversed is because the knowingly instruction was not provided. And Morris, at least the government's reading of Morris, is that Morris acknowledged that you do not need to give a good faith instruction if all the other elements are covered. The problem was the knowingly instruction was not covered. And therefore, they felt that the absence of the knowingly instruction as well as the absence of the good faith instruction required reversal. That circumstance does not appear in this case. Just out of curiosity, though, was this tax preparer prosecuted? Pardon me? Was the tax preparer prosecuted? Yes, Your Honor. Mr. Archuleta was prosecuted and admitted participation in not only this but other cases in which he prepared false returns for in the Central Valley for farm labor contractors at their request. They would come to him, as he claimed the defendant did, and say, please reduce my tax return, though this defendant was not a farm labor contractor. She owned her own flower shop. Now, tell me, what specifically was the argument that's claimed to have been amounted to misconduct, the closing argument? Well, you know, something about, well, this witness was lying. But what specifically was that concerned with? The specific argument was Mr. Archuleta and was a claim that … Mr. Archuleta. Yes. And it concerned whether or not he's … and it's even today somewhat of a confusing scenario in the sense of what actually is claimed. There was an issue as to whether or not, when Mr. Archuleta prepared the returns, what he did to make the returns false. And it revolved around the cost of goods sold. Well, I became an attorney and not an accountant for good reason because I don't understand accounting. But my understanding is that the cost of goods sold figure necessarily reduces net profit. There was an argument, and the statements by Mr. Archuleta indicate where he talks about the difference between I think it's a $525,000 figure and a $675,000 figure – I may have those numbers off slightly – that he increased the cost of goods sold. By increasing the cost of goods sold, he necessarily reduces net profit. And I'm oversimplifying the accounting procedure. The government's perception of the defense argument was that – the defense was arguing that Mr. Archuleta did not increase the cost of goods sold. And in my rebuttal argument, I prefaced my argument by saying that my argument was just that, that the jury should go with what they remember. But my recollection is that defense counsel, when he stated that, was wrong. I didn't state he was being untruthful. I simply stated he was wrong in his perception that Mr. Archuleta did not increase the cost of goods sold. It's – it almost deals with the double negative, which makes it confusing. But – and – It's also based on the, you know, interpretation of the evidence, huh? Yes. And there was no – there was no objection made during the argument. So this Court would review such a claim for plain error, which the government's position is does not exist. Seeing no further questions from the panel, thank you for your time. Thank you, Mr. Counsel. All right. Rebuttal, Mr. Close? Yes, thank you. On the final argument, it was a major thing at the time. But, again, it's the lawyer's interpretation of the evidence. And I didn't object because I didn't want to bring more – the jury attention to what was happening there. That's always the dilemma. It is. And I regretted not objecting. But I understand I made that choice. But I think in this particular instance, going back to that instruction number 44, dealing with the presumption, it applies – I argue to this Court that it applies to both counts, not just to the one count. Because the instruction, in reading from my excerpt of record, here's the instruction, the way it reads, and it's excerpt number 8. In the way it reads, a return or other tax document signed with the defendant's name creates a rebuttable presumption that the defendant actually signed it and had knowledge of its contents. The point is, the way it reads is that it doesn't necessarily have to be the defendant who signed it. If they gave someone else permission to sign it, the same presumption would apply. Anyone can write the defendant's name down there on the return if it's authorized. If it's authorized. Right. And there was no evidence that this wasn't authorized, if I recall, in this particular case. But her signature was on that tax return. And my argument would be that this instruction would apply to that one, too. How does the jury split the hairs? Many of us have tried a number of cases, and this Court has tried a number of cases. And when the judge reads those instructions to the jury, the Court tells them, don't take any one in particular. Take these as a whole. Look at the totality of the instructions in this particular case. Why do you think a taxpayer is asked to sign a tax return? Why do I think? I know when I sign it, it's just you're saying what's in there supposedly is correct. But I – the reality is people sign that every day and not knowing what's in that tax return. We've all signed disclaimers and all sorts of things that we don't read. And anybody that's been to a real estate closing knows. Sure. Yeah. But the signature is there for a reason. And in a real-life sense, isn't a jury going to assume that someone who signs that, affixes their name to a document, is going to have some reasonable familiarity with the numbers that are there? Whether or not they represent an accurate calculation based on legal principles is a bridge too far, probably. But isn't in a real-life sense the assumption that whoever signs that tax return has some understanding of what it says? That's what it's supposed to mean. Isn't that essentially what the instruction says? I totally disagree with that, Your Honor. It's saying you know what's the contents in there and it's your signature. When you sign it, you know the contents of that tax return. And the evidence is replete that this woman, again, with a fifth-grade education in Mexico, not here, working in the fields all her life and then starting a business later in her life, she did not understand what was in that tax return. The government argues that ---- Let me focus on that a little first. Yes. Is the issue in this case really that she knew that the bottom-line number was that she owed $18,470 or whatever the number was, or that she knew that whatever the number that was in the return was false? Yeah. And the government's argument, as I understand it, is that, look, the jury doesn't ultimately care whether the number is $42,872. That's true. It's whether she knew that that wasn't true and that she was signing something that was aimed at saving her money. If the government ---- so just knowing what's in the return isn't enough to make that case, and yet the jury is persuaded that, in fact, she knew, I mean, they convicted her, so presumably they were persuaded. So why isn't the government correct in saying the other elements are sufficient, that the jury found what it really had defined and that this is sort of a tangent on the field that isn't what the conviction is based on? Because what the government did by that instruction is jumpstart their case. They had something proven just because there's a presumption there automatically that she knew what was in that tax return. And then when you take it into contents of the evidence in the case, she specifically ---- she testified and her psychologist testified that she didn't know what was in those tax returns. She testified she didn't know. Yet when the judge tells the jury, when your name's on there, you know what's in it. That's to me a violation of due process. Put the burden on her to come back and prove that she didn't know. And it gave the government a leg up to prove an element beyond a reasonable doubt, or maybe not the actual element but something preceding, a condition preceding to the conclusion that she had proved. They failed to take advantage of it because they didn't argue it. But that, Judge, that's a facetious argument. Because you don't argue it to the jury doesn't mean the jury didn't consider it. Because you know the contents of a document does not necessarily mean that you know the contents to be false. That's true. I can agree with that. But the point is when the jury goes back there to decide this case, did they rely on this presumption, this instruction, or on the correct instructions? And we can't tell. The lurid case says when you can't tell, it should be reversed and it's not harmless error. Thank you very much. All right. Thank you. We thank both counsel. This case is submitted for decision. Next and final case on today's argument calendar is the Squaw Valley Development Company v. Goldberg and others. Thank you.
judges: Goodwin, Tashima, Clifton